UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GARRETT JAMES W.,[1]

                      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

_____

DECISION AND ORDER

1:22-cv-00730 (JJM)

        This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB") or supplemental security income ("SSI") benefits. Before the court are the parties' cross-motions for judgment on the pleadings [9, 11].[2]  The parties have consented to my jurisdiction [14].  Having reviewed the parties' submissions [9, 11, 12], the Commissioner's motion is granted and plaintiff's motion is denied.

_____

[1]      In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]      Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering.  All other page references are to the CM/ECF pagination (upper corner of the page).

**BACKGROUND**

The parties' familiarity with the 3,633-page Administrative Record [4, 5, 6] is presumed. Plaintiff filed an application for DIB and SSI in February 2016, alleging a disability beginning on January 1, 2015, due to herniated thoracic discs, Scheuermanns Kyphosis disease, herniated cervical disc, torn muscles in the shoulder, torn cartilage, and hypermobility in the lower back. Administrative Record at 196, 203, 237. This matter was previously remanded by a Decision and Order from this court. Id. at 2689; *see also* Garrett W. v. Commissioner, 2021 WL 821833 (W.D.N.Y. 2021).

The Decision and Order found that the Administrative Law Judge ("ALJ") erred when he failed to consider the opinions of independent medical examiners James W. Faulk, MD and Donald Paarlberg, MD. Id. at 2700. Accordingly, the Appeals Council "vacate[d] the final decision of the Commissioner of Social Security and remand[ed] this case to an [ALJ] for further proceedings consistent with the order of the court". Id. at 2705. In addition, it instructed the ALJ to "offer the claimant the opportunity for a hearing" and to "take any further action needed to complete the administrative record and issue a new decision". Id.

Thereafter, ALJ Bryce Baird held an administrative hearing on January 10, 2022. Id. at 2562-2613 (transcript of hearing). Plaintiff, who was represented by an attorney, testified along with a vocational expert ("VE") and a medical expert. Id. at 2567-80, 2583-2604, 2605-12.

**ALJ BAIRD'S DECISION**

On May 26, 2022, ALJ Baird issued a decision concluding that plaintiff was not disabled. Id. at 2539-53. To reach that determination, he found that plaintiff's severe impairments were cervical, thoracic, and lumbar degenerative disease; asthma; cirrhosis of the

liver; and depression.  Id. at 2542.[3]  He concluded plaintiff had the residual functional capacity

("RFC") to perform light work, with additional limitations:

> "[C]laimant has the [RFC] to perform light work . . . except he can
> never climb ladders, ropes, or scaffolds, and can no more than
> occasionally climb ramps or stairs.  He can never crawl and can
> only occasionally balance, stoop, kneel, or crouch.  He can perform
> no twisting.  The claimant is limited to occasional reaching with
> the dominant right upper extremity.  The claimant must avoid
> concentrated exposure to pulmonary irritants such as odors, fumes,
> dusts, gases, and poor ventilation, and must avoid any exposure to
> excessive vibration or hazards.  He cannot perform any work
> requiring him to drive a vehicle.  The claimant is limited to simple,
> routine tasks that can be learned after a short demonstration or
> within 30 days."

Id. at 2545.

## OPINION AND OTHER EVIDENCE

Among the opinions that ALJ Baird considered in his analysis to arrive at the

RFC were the January 2022 and May 2016 opinions of plaintiff's treating pain management

physician, Dr. Brooke Kelly, D.O.[4]  Id. at 2549 (referencing id. at 1357-59 and 3247-51).  Dr.

Kelly's May 2016 report was issued on a form used to report maximum medical improvement

for workers' compensation injuries.  In it, she identified the diagnoses related to plaintiff's work-

related injury (i.e. plaintiff's thoracic spine injury) and the physical findings and diagnostic test

results that supported her opinion.  Id. at 1357-58.  The last page of her report includes a

checkbox form upon which she opines that plaintiff is limited to lifting, carrying, pushing, and

pulling up to 20 pounds occasionally, defined by the form as "can perform activity up to 1/3 of

---

[3]    Plaintiff does not challenge these findings.

[4]    Because plaintiff's arguments focus on the ALJ's treatment of these opinions, I focus here on
these opinions.  Plaintiff does not challenge the ALJ's treatment of other opinions in the record.

the time". Id. at 1359. She opined that plaintiff had no limitations performing the remaining activities listed, including sitting, standing, walking, climbing, kneeling, bending/stooping/squatting, reaching overhead, and reaching at/or below shoulder level. Id. Finally, she stated that plaintiff was capable of "light work", defined therein as, *inter alia*, "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently and/or negligible amount of force constantly to move objects". Id. at 1359.

On January 19, 2022, Dr. Kelly completed a Physical Treating Medical Source Statement. Administrative Record at 3247-51. She stated that she had been seeing plaintiff monthly since June 2011. Id. at 3247. Plaintiff's pain or other symptoms were capable of interfering occasionally with the attention or concentration needed to perform even simple work tasks. Id. at 3248. He could walk five city blocks without rest or severe pain. He could sit, stand, and walk for up to 6 hours during an 8-hour workday, but may need to get up, or sit down, after sitting or standing for approximately one hour. Id. at 3248-49. She opined that plaintiff would need to walk for approximately 5 minutes every hour, and would need to take unscheduled 10-15 minute breaks a few times a week during an 8-hour workday. Id. at 3249. Plaintiff could lift up to 20 pounds occasionally, and up to 10 pounds frequently. Id. He could turn his head (up, down, left, or right) occasionally. Id. at 3250. He could twist, stoop, crouch/squat, climb ladders and stairs occasionally. Id. Dr. Kelly opined plaintiff would be absent from work "[a]bout two days per month" "as a result of the impairments or treatment" related to his thoracic injury. Id. Finally, Dr. Kelly opined that plaintiff could reach, including overhead, for only 50% of an 8-hour workday with either arm. Id.

ALJ Baird outlined plaintiff's treatment records, including those of Dr. Kelly. He acknowledged plaintiff's "complaints of chronic pain in the neck, mid-back, and lower back"

and that his pain "sometimes radiates to his ribcage and/or extremities".  Id. at 2547, citing

treatment notes from 2010 to 2019 (id. at 566, 594, 608, 617, 623, 1079, 2363, and 3557).  ALJ

Baird also identified the results of a 2011 thoracic spine MRI that showed "small central disc

protrusion at the T6-T7 and T7-T8 vertebral levels causing mild anterior thecal sac flattening,

and disc herniation at the T9-T10 level" in addition to a 2014 cervical MRI that showed a "left

paracentral disc protrusion flattening the anterior thecal sac at the C6-C7 vertebral level and mild

encroachment of the neural foramen bilaterally at the C5-C6 level" with "thoracic and lumbar

radiculitis".  Id. at 2547, citing id. at 491, 575, 1007, and 2487.

Finally, ALJ Baird contrasted plaintiff's testimony "that he cannot stand or walk

for prolonged periods and is severely limited in his ability to lift and carry objects" with

"treatment records [that] describe consistently normal gait and motor strength, as well as

negative straight leg raising".  Id., citing as examples Dr. Kelly's treatment notes from December

5, 2018 (id. at 3597), December 6, 2019 (id. at 3492), May 24, 2021 (id. at 3422), June 8, 2021

(id. at 3315), August 4, 2021 (id. at 3307), and November 10, 2021 (id. at 3274).  ALJ Baird also

noted that a "physical therapy evaluation in February 2016 showed generally normal posture and

intact sensation, despite findings of hypoactive deep tendon reflexes and questionable

hypermobility of the lumbar spine".  Id. at 2547, citing id. at 522-23.  He also cited Robert

Bauer, M.D.'s July 2016 independent medical examination, which "showed normal gait and

lumbar lordosis, and intact sensation, reflexes, and motor strength, although range of motion in

the shoulders and spine were decreased".  Id. at 2547, citing id. at 1311.

ALJ Baird assigned "limited weight" to Dr. Kelly's January 2022 opinion, but

"[g]reater weight" to her May 2016 opinion:

> "Limited weight is given to the January 18, 2022 opinion of Dr.
> Brooke Kelly . . . .  Dr. Kelly does not explain or cite any evidence

> in support of her conclusions that the claimant would need to miss
> about two days of work per month and would be limited to sitting
> and standing one hour and walking five city blocks at one time,
> and those findings are inconsistent with the generally mild to
> normal physical examination findings described in the treatment
> records. Greater weight is given to Dr. Kelly's May 2016 opinion,
> finding the claimant capable of lifting and carrying up to 20
> pounds . . . , as it is consistent with the medical evidence of record
> describing degenerative disc disease with complaints of back and
> neck pain with radiculopathy but largely normal physical
> examination findings, as discussed above."

Id. at 2549.

## DISCUSSION

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. §405(g). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). ). "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record". Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018); see also Brault v. Commissioner, 683 F.3d 442, 448 (2d Cir. 2012) ("the substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*") (emphasis in original).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole".  Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order). See also Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination").

Under the "treating physician rule"[5], a treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record".  20 C.F.R. §§404.1527(c)(2); 416.927(c)(2). If the treating physician's opinion does not meet this standard, the ALJ may discount it, but is "required to explain the weight it gives to the opinions of a treating physician . . . .  Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand".  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). See also 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). "The ALJ must consider, inter alia, the '[l]ength of the treatment relationship and the frequency of examination'; the '[n]ature and extent of the treatment relationship'; the 'relevant evidence . . . particularly medical signs and

---

[5]     New regulations affecting an ALJ's review of medical evidence in a claimant's file are in effect for claims filed on or after March 27, 2017.  See 20 C.F.R. §§404.1520c, 416.920c.  However, this claim was filed in February 2016.  Administrative Record at 196, 203.

laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (*citing* 20 C.F.R. §404.1527(d), now (c)).  However, an ALJ's "failure to explicitly discuss the relevant factors does not necessarily require remand where a searching review of the record assures the court that the substance of the treating physician rule was not traversed."  Thomas W. v. Commissioner, 2021 WL 3513840, *7 (W.D.N.Y. 2021).

It is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record."  Maleski v. Commissioner, 2020 WL 210064, *4 (W.D.N.Y. 2020); *see also* Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) ("[t]he ALJ was permitted to consider [treating] Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and [consulting psychologist] Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable").

**B.     Did ALJ Baird Properly Assess Dr. Kelly's Opinions?**

Plaintiff argues that the ALJ "failed to provide good reasons for not giving treating physician, Dr. Brooke Kelly's opinion controlling weight nor did he properly evaluate the opinion with the required Burgess factors under the applicable treating physician rule".  Plaintiff's Memorandum of Law [9-1] at 17-18.  Plaintiff argues that ALJ Baird "made no consideration of the lengthy treatment history with Dr. Kelley, her specialty, the frequency of

treatment, the type of treatment provided, consistency with other medical and opinion evidence or even considering she provided over 400 pages of treatment records in support of her opinion". Id. at 20.  He argues further that the ALJ "fail[ed] to provide 'good reasons' for not giving controlling weight to this treating opinion".  Id. at 21.

I agree with the Commissioner that ALJ Baird sufficiently explained his rationale for assigning greater weight to Dr. Kelly's 2016 opinion than to her 2022 opinion. Commissioner's Brief [11-1] at 17-19.  Moreover, I agree that the ALJ considered the Burgess factors in his decision.  Id. at 20-21.

Although ALJ Baird's analysis might have been stated with more clarity, and could have cited more extensively to this voluminous record, his decision, read as a whole, satisfies his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached".  Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020) (internal quotation omitted).  He neither mischaracterized nor cherry-picked the record to support his conclusions.

Therefore, I find that his conclusions concerning plaintiff's RFC are supported by substantial evidence. That is, a "reasonable mind might accept" ALJ Baird's reasoning "as adequate to support his conclusion".  Consolidated Edison Co., 305 U.S. at 229.  The substantial evidence standard means that, "once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*".  Brault, 683 F.3d at 448 (emphasis in original).

First, plaintiff argues that ALJ Baird did not provide "good reasons" for not giving controlling weight to Dr. Kelly's 2022 opinion.  I disagree.  ALJ Baird identifies specific

reasons for the "[l]imited weight" he assigned to that opinion, compared to the "[g]reater weight" he assigned to her 2016 opinion:

> "Dr. Kelly does not explain or cite any evidence in support of her conclusions that the claimant would need to miss about two days of work per month and would be limited to sitting and standing one hour and walking five city blocks at one time, and those findings are inconsistent with the generally mild to normal physical examination findings described in the treatment records. Greater weight is given to Dr. Kelly's May 2016 opinion, finding the claimant capable of lifting and carrying up to 20 pounds . . ., as it is consistent with the medical evidence of record describing degenerative disc disease with complaints of back and neck pain with radiculopathy but largely normal physical examination findings, as discussed above."

Administrative Record at 2549. The "largely normal physical examination findings" discussed previously in ALJ Baird's decision accurately identify "consistently normal gait and motor strength, as well as negative straight leg raising" in Dr. Kelly's records. Id. at 2547. To support this statement, ALJ Baird cited as an example specific notations in Dr. Kelly's treatment notes from 2018 to 2021. Id. ("see, e.g., 23F/23, 56, 171, 241, 346", referring to Administrative Record pages 3274, 3307, 3315, 3422, 3492, and 3597). Coupled with ALJ Baird's observation that Dr. Kelly's 2016 opinion is "consistent with the medical evidence of record" suggests that ALJ Baird considered the findings in Dr. Kelly's records at least from 2016 through 2021.

In fact, Dr. Kelly's records demonstrate that her findings and plaintiff's complaints of pain were relatively static, and sometimes identical, from 2016 through 2021. For example, Dr. Kelly's February 15, 2016 treatment note included the following findings on examination: "Muscle strength 5/5, sens[ation] intact to light touch, no sternal point tenderness. Mild thoracic [paraspinal muscle] spasms and spinal tenderness. Negative cervical compression test". Id. at 396. At that visit, plaintiff stated his pain was at 2-3/10. Id. at 395. Dr. Kelly's

findings on examination were identical at plaintiff's March 29, 2017, and November 6, 2017

visits. *See* id. at 393, 391.

Dr. Kelly's findings on examination beginning with plaintiff's December 5, 2018

visit consistently included the these findings and, in addition, "gait normal", "shoulder full

[range of motion] [bilaterally], speeds and impingement signs – pos[itive] for thoracic pain

neg[ative] for shoulder pain", "neg[ative] [straight leg raise]", and "full [active range of motion]

neck". Id. at 3597. Plaintiff continued to describe his pain as 2-3 out of 10. Id. at 3595. Dr.

Kelly included identical findings in her treatment notes dated January 2, 2019 (id. at 3585-86),

February 27, 2019 (id. at 3579), April 30, 2019 (id. at 3566), and May 29, 2019 (id. at 3558).

At his June 26, 2019 visit, Dr. Kelly made these same findings, and, in addition,

noted that plaintiff was "unable to touch the back of his head with both hands in a sitting position

– i.e. [active range of motion] shoulder limited in end ranges of external rotation". Id. at 3550.

She then made identical findings on July 24, 2019 (id. at 3542), August 23, 2019 (id. at 3532),

September 23, 2019 (id. at 3523), October 21, 2019 (id. at 3512), November 21, 2019 (id. at

3504), December 6, 2019 (id. at 3492), December 11, 2019 (id. at 3484), January 8, 2020 (id. at

3474), March 4, 2020 (id. at 3462), June 8, 2020 (id. at 3422), July 6, 2020 (id. at 3414), August

17, 2020 (id. at 3406-07), September 23, 2020 (id. at 3398-99), October 21, 2020 (id. at 3389),

November 10, 2020 (id. at 3378), December 17, 2020 (id. at 3369), January 22, 2021 (id. at

3360), March 16, 2021 (id. at 3343), April 21, 2021 (id. at 3334), May 24, 2021 (id. at 3324-25),

June 28, 2021 (id. at 3315), August 4, 2021 (id. at 3307), September 1, 2021 (id. at 3299-300),

October 13, 2021 (id. at 3290-91), November 10, 2021 (id. at 3274-75), and December 15, 2021

(id. at 3261). At these visits, plaintiff consistently rated his pain level somewhere between 2 to 4

out of 10. Id. at 3584, 3577, 3564, 3556, 3551, 3543, 3533, 3523, 3513, 3505, 3490, 3482 (rated

as both 4 and 4-6/10 in different sections of the report), 3473, 3460, 3420, 3412, 3405, 3400, 3391, 3380, 3371, 3362, 3345, 3336, 3322, 3313, 3305, 3298, 3287, 3272, and 3259.

Therefore, I conclude that ALJ Baird's citation of only a few of Dr. Kelly's records over time was an accurate exemplar of her records overall, and supported his statement that the findings of "normal gait and motor strength, as well as negative straight leg raising" were "consistently" stated in the record. Id. at 2547. This review also demonstrates that that ALJ Baird's assertion that Dr. Kelly's findings were "generally mild to normal physical examination findings" was an accurate characterization. Dr. Kelly recorded her finding upon examination of "mild thoracic [paraspinal muscle] spasms and spinal tenderness" in every treatment note in the record from 2016 through 2021.

Further, given the paucity of changes over time to plaintiff's complaints to Dr. Kelly, and the consistency of her physical examination findings over time, I find that ALJ Baird's assignment of greater weight to Dr. Kelly's May 2016 opinion than to her January 2022 opinion is supported by substantial evidence. ALJ Baird noted that Dr. Kelly did "not explain or cite any evidence in support of her conclusions that claimant would need to miss about two days of work per month and would be limited to sitting and standing on hour and walking five city blocks at one time", and Dr. Kelly's records show no significant increase in plaintiff's symptoms, decrease in function, increase in the amount of pain medication prescribed, or updated diagnostic testing demonstrating a deterioration in plaintiff's condition between 2016 and 2022.

I find further that ALJ Baird considered in his opinion the factors outlined in 20 C.F.R. §1527(c). As stated above, those factors are: 1) examining relationship; 2) treatment relationship (including the length, nature, and extent of the treating relationship); 3)

supportability; 4) consistency with the record as a whole; and 5) specialization. 20 C.F.R. §404.1527(c).

ALJ Baird's citation to Dr. Kelly's treatment records, and his summary of the physical findings they contain (id. at 2547, 2549), demonstrates that he was aware, and considered, that she examined the plaintiff. ALJ Baird was also aware of the length of Dr. Kelly's treatment relationship with plaintiff. First, the January 2022 opinion states right on the first page that she treated plaintiff "since 6/11/2011". Id. at 3247. ALJ Baird cited and considered this opinion in detail. I therefore conclude that he was aware of its contents. Further, the ALJ explicitly considered Dr. Kelly's May 2016 opinion, demonstrating, at the very least, that he was aware that she had treated the plaintiff from May 2016 through January 2022. Finally, he was aware that plaintiff saw Dr. Kelly monthly and that she was a pain management specialist. He noted that plaintiff testified that he "sees a pain management doctor once a month" and the front page of Dr. Kelly's 2022 opinion stated that she sees plaintiff "monthly". Id. at 2546, 3247. Further, he cited Dr. Kelly's treatment notes spanning a number of years that were all included in a single exhibit containing Dr. Kelly's monthly treatment notes from April 2019 through December 2021. Id. at 2547 (citing Exhibit 23F, found in the Administrative Record at pages 3252 through 3627). Together, these facts demonstrate that ALJ Baird considered the length of Dr. Kelly's treatment relationship with plaintiff.

Next, ALJ Baird explicitly considered whether Dr. Kelly's opinions were supported by her treatment notes and consistent with them and the other evidence in the record. He specifically stated with respect to her 2022 opinion that "Dr. Kelly does not explain or cite any evidence *in support of* her conclusions . . . and those findings are *inconsistent* with the generally mild to normal physical examination findings described in the treatment records." Id.

at 2549 (emphasis added). With respect to her 2016 opinion, ALJ Baird stated that her opinions were "*consistent with* the medical evidence of record describing degenerative disc disease with complaints of back and neck pain with radiculopathy but largely normal physical examination findings, as discussed above". Id. (emphasis added).

ALJ Baird properly considered the Burgess factors as he was required to do under 20 C.F.R. §404.1527(c). I find that this analysis, considered as a whole, satisfied his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached". Lopez obo Y.T., 2020 WL 4504987 at *2. Further, after considering ALJ Baird's analysis in the context of the record, I cannot find that "no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record". Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018).

Finally, I reject plaintiff's invitation to reconsider the ALJ's analysis of Dr. Kelly's 2022 opinion by comparing it to other opinions in the record. Although there is evidence in the record that could support different findings, "there is substantial evidence to support the ALJ's decision. The Commissioner, not the Court, is responsible for weighing conflicting evidence." Pagan o/b/o Delgado v. Barnhart, 409 S.Supp.2d 217, 220 (W.D.N.Y. 2006).

**CONCLUSION**

For these reasons, the Commissioner's motion for judgment on the pleadings [11] is granted and the plaintiff's motion [9] is denied.

**SO ORDERED**.

Dated: September 23, 2025                    /s/   Jeremiah J. McCarthy
                                             JEREMIAH J. MCCARTHY
                                             United States Magistrate Judge

- 14 -